UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SARAH COULSEY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-cv-10471-MGM |
| OPTION ONE MORTGAGE CORP., et. al., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 75)

September 30, 2016

MASTROIANNI, U.S.D.J.

### INTRODUCTION

Plaintiff, Sarah Coulsey, brought this action against Option One (Defendant) and several other defendants, asserting a variety of claims related to the issuance and servicing of a mortgage on Plaintiff's home. By consent of the parties, the case was initially before Magistrate Judge Robertson, who considered motions to dismiss filed by various defendants. Judge Robertson dismissed a number of counts with prejudice, but dismissed Plaintiff's count alleging Defendant violated a Massachusetts consumer protection statute, Mass. Gen. L. ch. 93A, § 9 ("93A") without prejudice. The court explained that it lacked jurisdiction over that claim because Plaintiff had not sent a demand letter to Defendant prior to filing the action, as required by § 9 of 93A.

In January of 2016, Plaintiff sent Defendant a 93A demand letter. After receiving Defendant's response, she filed her Second Amended Complaint, in which she reasserted her 93A

claim (Count IV) and asserted three new claims for (i) violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. sq. ("FDCPA") (Count I), (ii) defamation of character (Count V), and (iii) emotional distress (Count VI). Defendant moved to dismiss all four claims based on failure to state a claim for which relief can be granted.[1]  Though Plaintiff asserts claims against several defendants, this opinion concerns only Defendant's motion to dismiss and therfore confines its discussion to the conduct attributed to Defendant and the claims asserted against it.

## JURISDICTION

Plaintiff's Second Amended Complaint asserts four claims against Defendant; one claim alleges violations of a federal statute, the FDCPA, while the remaining counts assert claims which can be brought, if at all, only pursuant to state law. Federal courts have jurisdiction over claims brought pursuant to federal laws and claims brought pursuant to state law where there is complete diversity of citizenship between the adversaries and the amount in controversy exceeds a threshold amount of $75,000. 28 U.S.C. §§ 1331, 1332; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Consistent with the Judge Robertson's explanation for denying Plaintiff's earlier motion to remand, this court has subject matter jurisdiction over this case based on both federal question and diversity jurisdiction. (*See* Dkt. No. 48.)

## MOTION TO DISMISS STANDARD[2]

When deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the plaintiff has alleged sufficient facts that, if proved true, support "the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] Defendant also argues the court should consider only Plaintiff's 93A claim because Judge Robertson's order did not grant Plaintiff leave to add claims when she filed her Second Amended Complaint. While recognizing Defendant's argument may have some merit from a procedural perspective, the court declines to adopt such a position with respect to the *pro se* plaintiff.

[2] In her opposition to Defendant's Motion to Dismiss, Plaintiff questioned why Defendant cited cases, such as *Conley v. Gibson*, 355 U.S. 41 (1957), as they appeared to her unrelated to this case. These cases are cited because they are relevant to procedural rules – specifically the rules a court follows when evaluating a motion to dismiss.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim for relief" is a context-specific task that requires "the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Id.*; *see also San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012).

When the court talks about "well-pleaded facts" the court refers to specific allegations about "who did what to whom, when, where, and why." *Calvi v. Knox Cnty.*, 470 F.3d 422, 430 (1st Cir. 2006) (*quoting Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004)). The court does not accept as true allegations that are legal conclusions. *Iqbal*, 556 U.S. at 678**.** However, in some cases if additional facts are contained in other documents that are "sufficiently referred to in the complaint" and are "central to plaintiffs' claims," the court can also consider those facts. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988). In this case, the court, recognizing the difficulties facing plaintiffs who proceed *pro se*, reads the Complaint liberally and also considers the factual content of Plaintiff's demand letter dated January 6, 2016, attached to the Complaint as Exhibit D. *See Rodi v. Southern New England Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004).

## FACTUAL BACKGROUND

In 2007 Plaintiff obtained a mortgage from Defendant. Later that year, Plaintiff failed to make all the payments required under the mortgage in a timely manner.[3] (Dkt. No. 73, Second Am. Compl. ¶ 12.)  On January 3, 2008, Defendant returned a payment sent by Plaintiff, stating Plaintiff's

---

[3] The court is unable to describe Plaintiff's payment history with precision. In her Second Amended Complaint Plaintiff first states she was "late with two payments due to loss of income." (Dkt. No. 73, Second Am. Compl. ¶ 1.) The complaint later adds details that Plaintiff "had been behind for October and November's payments" and as of December 28, 2007 she "was only behind on her mortgage by twenty-eight (28) days." (*Id.* ¶ 13.) However, the complaint also indicates that as of January 3, 2008 Plaintiff owed "4 past due payments." (*Id.* at ¶ 15.)

"mortgage was in foreclosure" as of December 28, 2007. (*Id.* at ¶ 12.) Defendant also reported to

the three major credit bureaus that Plaintiff was behind on her payments and her mortgage was in

foreclosure.[4] *Id.* at 188.) Upon receiving the returned payment, Plaintiff called Defendant and was

informed that she would have to enter a forbearance agreement if she wanted to save her mortgage.

The agreement called for a lump sum payment of $6,000 and payments of $2,243.76 for four

months. (*Id.* at ¶ 14.) Plaintiff paid the $6,000, but half of the money was applied to fees, causing the

amount to cover only two months of payments, rather than four.  (*Id.* at ¶ 16.) In addition, after

making a payment of $2,243.76 in February, Plaintiff received a letter from Defendant stating that

she did not have a payment due until April. (*Id.* at ¶ 18.)

Plaintiff contacted Defendant and was told by three different people that she did not need to

send a payment of $2,243.76 to Defendant in March because she had previously overpaid. (*Id.*) The

day before the March payment would have been due, Plaintiff again contacted Defendant and again

confirmed with three different people that no payment was due in March. (*Id.* at ¶ 19.) She also

learned that her April payment was just $1,540. (*Id.*) After Plaintiff sent in her April payment of

$1,540, Defendant sent the payment back to her and told her she had broken the forbearance

agreement. (*Id.* at ¶ 14.)

Later, Plaintiff attempted to apply for loan modification at least twenty four times with the

various defendants, but she does not specify the dates when she submitted loan modification

paperwork to Defendant. (*Id.* at ¶ 21.) She also made many phone calls to the various defendants

between 2008 and 2016, but she does not specify any times after April of 2008 when she made

phone calls to Defendant. (*Id.* at ¶ 19.) When Plaintiff did make calls to Defendant, the individuals

who answered her calls were not authorized to give her any information other than the amount she

---

[4] The Second Amended Complaint indicates that Defendant subsequently made additional reports to the credit bureaus, but does not specify when those reports were made. (Second Am. Compl., Dkt. 73, ¶ 188.)

owed. (Dkt. No. 73-1, Ex. D., 93A Demand Letter.) With one exception, her attempts to speak with supervisors were unsuccessful. (*Id.*) During one call, Plaintiff spoke with a supervisor named Debbie Zapata. Ms. Zapata told Plaintiff she would call her back, but never did so. (*Id.*)

During 2008, the Massachusetts Attorney General reached a settlement with Defendant regarding mortgages it originated between 2004 and 2008 and which were serviced by American Home Mortgage Servicing ("AMHS").[5] (*Id.*; Dkt. No. 73, Second Am. Compl. ¶ 125.) Plaintiff's loan was serviced by AMHS when the settlement was announced, but Defendant has never contacted Plaintiff in connection with this settlement and Plaintiff has been unable to modify the mortgage originated by Defendant. (Dkt. No. 73-1, Ex. D, 93A Demand Letter.)

## DISCUSSION

A. Violations of Chapter 93A

"Any person . . . who has been injured" by "unfair or deceptive acts or practices" may bring an action under Chapter 93A, provided, in the case of an individual consumer, the person first sends a demand letter to the party whose acts or practices caused the injury. Mass. Gen. Laws ch. 93A, §§ 2(a), 9(1), 9(3); *see also Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 240 (1st Cir. 2013). In order to recover under 93A, a Plaintiff must establish that the defendant acted in an unfair or deceptive manner and that "the defendant's unfair or deceptive act caused an adverse consequence or loss." *Rhodes v. AIG Domestic Claims, Inc.*, 961 N.E.2d 1067, 1076 (Mass. 2012). At this preliminary stage of the litigation, Plaintiff's allegations regarding the way in which Defendant handled the forbearance agreement sufficiently establish the first element. With respect to the second element, Plaintiff has sufficiently pleaded that Defendant's actions in reporting the mortgage as in foreclosure, advising

---

[5] Plaintiff has also asserted claims against AHMS, but those claims are not affected by this ruling.

her as to her payment obligations, and crediting her payments, caused the economic losses in the form of loss of equity in her home and damage to her credit rating. *See Young*, 717 F.3d at 241.

Having determined Plaintiff has adequately pleaded the elements required under 93A, the court turns to Defendant's argument that Plaintiff's 93A claim is barred by the statute of limitations. Claims brought under 93A are subject to a four-year statute of limitations, which begins to run when "the cause of action accrues." Mass. Gen. Laws ch. 260, § 5A. A cause of action brought pursuant to 93A "typically occurs at the time injury results from the assertedly unfair or deceptive acts." *Cambridge Plating Co., Inc. v. Napco, Inc.*, 991 F.2d 21, 25 (1st Cir. 1993).

In both her Second Amended Complaint and her demand letter, Plaintiff alleges Defendant's determination that her mortgage was in foreclosure caused damage when the status was reported to credit reporting bureaus and its actions related to the forbearance agreement caused her to lose equity in her home. These activities occurred in 2008 and Plaintiff has alleged no facts from which the court can infer there was a significant delay between when the activities occurred and when Plaintiff became aware they had caused her injury. The court, therefore, concludes Plaintiff's 93A claim against Defendant is barred by the statute of limitations and must be dismissed with prejudice.

B.   Violations of the FDCPA

The FDCPA "proscribes debt collectors from making any 'false, deceptive or misleading representation[s] . . . in connection with the collection of any debt.'" *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 65 (1st Cir. 1998) (quoting 15 U.S.C. § 1692e). "A viable claim for violation of the FDCPA requires that a plaintiff establish three elements: '(1) that she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA.'" *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 30 (D. Mass. 2014) (quoting *Som v. Daniels Law Offices, P.C.*, 573 F. Supp. 2d 349, 356 (D. Mass. 2014)). In addition, a viable claim must be brought "'within one year from the

6

date on which the violation occurs'" because "the FDCPA contains an explicit one-year statute of limitations." *Brown v. Bank of Am., Nat. Ass'n*, 67 F. Supp. 3d 508, 518 (D. Mass. 2014) (quoting 15 U.S.C. § 1692k(d)).

Plaintiff alleges Defendant violated FDCPA by (i) "falsely representing the legal status of Plaintiff's debt and claiming she was in foreclosure," (ii) stating Plaintiff could only prevent the foreclosure "by signing a foreclosure agreement, (iii) threatening to foreclose on Plaintiff's home, but then not foreclosing on the home, and (iv) forcing Plaintiff into a forbearance agreement. (Dkt. No. 73, Sec. Am. Compl., ¶¶ 59-62.) Each of these alleged violations took place between December of 2007 and April of 2008, far more than one year prior to the filing of this suit in January of 2015. Plaintiff's FDCPA claims against Defendant are therefore time-barred and must be dismissed with prejudice.

C. Defamation

The tort of defamation "seek[s] to impose liability on a defendant for harm sustained by a plaintiff as a result of the publication of a false statement about the plaintiff to others." *HipSaver, Inc. v. Kiel*, 984 N.E.2d 755, 762 (Mass. 2013). Plaintiff bases her defamation claim on Defendant's erroneously reporting to credit reporting agencies that her mortgage was in foreclosure. She describes Defendant as having made such reports "starting in January 2008." Under Massachusetts law, defamation claims are subject to a three-year statute of limitations, which begins to run when the defamatory statement is published. *McLaughlin v. Boston Retirement Board*, 146 F. Supp. 3d 283, 290 (D. Mass. 2015); Mass. Gen. Laws ch. 260, § 4. As the only publication date specified by Plaintiff in her complaint was January of 2008, Plaintiff's defamation claim is time-barred and must be dismissed with prejudice.

D.  Infliction of Emotional Distress

Under Massachusetts law, a tort action for negligent infliction of emotional distress allows plaintiffs to recover when a defendant who owes a duty to the plaintiff and negligently breaches that duty and the breach causes the plaintiff both emotional distress and some physical harm. *See Gutierrez v. Mass. Bay Transp. Auth.*, 772 N.E.2d 552, 566 (Mass. 2002). A second tort action for intentional infliction of emotional distress allows a plaintiff to recover from a defendant who intentionally acts in a manner that is beyond the bounds of decency to cause severe emotional distress to the plaintiff. *See Gouin v. Gouin*, 249 F. Supp. 2d 62, 73 (D. Mass. 2003). Both claims for negligent and intentional infliction of emotional distress are subject to a three-year statute of limitations that begins to run when the cause of action accrues. Mass. Gen. Laws ch. 260, § 2A. "A cause of action accrues for purposes of the applicable statutes of limitations when the plaintiff is injured." *Pareles v. McLean Hosp.*, 919 N.E. 2d. 716 (Mass. App. Ct. 2010). Under an alternative rule, known as the discovery rule, a claim accrues "'when the plaintiff discovers, or reasonably should have discovered,' that he has or may have been harmed by the defendant's conduct." *Id.* (quoting *Koe v. Mercer*, 876 N.E.2d 831 (Mass. 2007)).

Before considering whether Plaintiff has made an adequate showing as to all the required elements of an infliction of emotional distress tort, the court considers whether such claims are barred by the statute of limitations. Plaintiff asserts that "during the time [Defendant] serviced [her mortgage]," Defendant's actions with respect to the servicing of the mortgage caused Plaintiff stress, which in turn caused her migraines, hypertension, and stomach ulcers. (Dkt. No. 73, Second Am. Compl. ¶¶ 206, 208.) Plaintiff has not alleged that Defendant continued to service her mortgage after April of 2008. Additionally, she has alleged her loan met the eligibility requirements for loan modifications under the settlement announced prior to November of 2011, conceding that Defendant had ceased to service her mortgage prior to that settlement, and more than three years

prior to the filing of this action. (Dkt. No. 73, Second Am. Compl. ¶ 125(e); Dkt. No. 73-1, Ex. C,

Option One Settlement FAQs.) Plaintiff's claims for infliction of emotional distress are, therefore,

barred by the statute of limitations and are dismissed without prejudice.

### CONCLUSION

For the reasons set forth above, the court ALLOWS Defendant's Motion to Dismiss (Dkt.

No. 75).

It is So Ordered.


  /s/ Mark G. Mastroianni

MARK G. MASTROIANNI

United States District Judge